Morris v. State 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-662-CV





A. J. MORRIS AND BURK MORRIS D/B/A/ CALC-ARENITIC,




 
 APPELLANTS


vs.





STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 454,914, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING



 




 A. J. Morris and his brother Burk Morris, appellants, appeal from a final judgment
in an enforcement suit brought by the State of Texas, appellee, to recover administrative penalties
for failure to comply with a Railroad Commission order to plug certain oil wells. The essence
of the Morrises' appeal is that they did not receive appropriate notice of the Railroad Commission
hearing, proposal for decision, or final order. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 The underlying facts of this case occurred nearly a decade ago. In the early 1980s,
Burk Morris, then an oil field consultant, now an attorney, created a partnership with his brother
A. J. Morris, a physician, to "try to find some oil [and] get rich." The Morrises drilled three
unsuccessful wells in Archer County. In 1985 they abandoned these wells, leaving them
unplugged. In 1987 the Railroad Commission commenced an enforcement action against the
Morrises. Notice of a public hearing to determine plugging responsibility was sent by the
Railroad Commission to the addresses the Morrises had previously provided the agency when they
registered to become oil and gas operators. The Morrises failed to appear at this hearing. A
proposal for decision was drafted and mailed to the Morrises at the same addresses. A final order
was subsequently issued by the Commission and again mailed to the Morrises. The case was then
referred to the Attorney General for enforcement.

 Suit was originally filed in 1988 and tried in 1989; the Morrises did not appear,
and a default judgment was rendered. Following an unsuccessful collateral attack in bankruptcy
court, the Morrises appealed the state-court judgment. However, some of the trial exhibits
disappeared from the record and the Texarkana Court of Appeals reversed the judgment and
remanded the cause for a new trial to develop a complete record. (1) The case was retried in July
1993. This time the Morrises appeared. The essence of their defense was that although they may
have received actual notice of the initial Railroad Commission hearing, they did not have the
required ten-day statutory notice. (2) See Administrative Procedure Act, Tex. Gov't Code Ann.
§ 2001.051 (West 1995) (requiring reasonable notice of not less than ten days in contested cases);
16 Tex. Admin. Code § 1.45(a) (1994) ("The commission shall issue notice not less than 10 days
prior to hearings in contested cases or other nonrulemaking proceedings."). Following a bench
trial, the court rendered a final judgment assessing $17,000 in administrative penalties against the
Morrises. 

 The Morrises now appeal from this final judgment, raising six points of error. 
Points of error one and two contend that there was no evidence or insufficient evidence that the
Morrises received statutory notice of the commission hearing. Points of error four and five claim
there was no evidence or insufficient evidence that they received notice of the Commission's final
order. Point of error three claims the Commission's final order is void because the proposal for
decision was not served on the Morrises. In a final point of error, they reiterate their "no notice"
claims and argue violation of due process. Hence, all of these grounds of error hinge on whether
the Morrises were given reasonable notice of the hearing, proposal for decision, and final order. (3)


DISCUSSION


 The Railroad Commission has jurisdiction over all persons owning or engaged in
drilling or operating oil or gas wells in Texas. Tex. Nat. Res. Code Ann. § 81.051 (West 1993). 
This responsibility involves regulating more than 250,000 producing oil and gas wells, conducting
over 140,000 inspections, and investigating over 3,200 complaints. See 2 Ernest E. Smith &
Jacqueline Lang Weaver, Texas Law of Oil and Gas § 8.1(D), at 15 (1994). The Commission's
regulatory responsibility extends over the 80,000 unplugged wells in Texas, the vast majority of
which are in violation of the well-plugging statutes and rules. See 3 Smith & Weaver, supra,
§ 14.2(A), at 157 (1994).

 Recognizing this staggering regulatory task, the legislature requires all persons,
partnerships, or corporations performing operations within the Commission's jurisdiction to
immediately file with the Commission an organization report that includes the name and address
or post office box of the organization and its officers and directors. Tex. Nat. Res. Code Ann.
§ 91.142 (West 1993). To implement this statutory requirement, the Commission requires oil and
gas operators to submit an organization report with current names and addresses and to refile this
report annually. 16 Tex. Admin. Code § 3.1 (1994). (4) The organization report is submitted on
a Form P-5. It is well known that all Commission correspondence will be mailed to the mailing
address shown on the P-5 form. See Texas Oil and Gas Handbook 14 (1987). Indeed, the
instructions on the reverse of the P-5 form specify that all correspondence will be directed to the
mailing address provided.

 At trial, the state introduced a copy of the notice of hearing for the original August
6, 1987, hearing. The certificate of service of this document reflects that on July 8, 1987, the
Commission sent the notice to the addresses listed on the Morrises' P-5 by both certified and first-class mail, well in excess of the ten-day requirement. Additional Commission documents reflect
that the proposal for decision was "served" on all parties on June 13, 1988, at their P-5 addresses. 
Felix Dailey, director of field operations at the Commission, testified that the proposal for
decision was mailed, but not by certified mail. Finally, Commission documents included records
that the final order was also sent to the P-5 addresses. Dailey confirmed that this was also done
by regular mail rather than certified mail. The Morrises testified at trial that they never received
any of these documents.

 Based upon this review of the evidence, we conclude that there is both factually and
legally sufficient evidence for the trial court to find that the Morrises received statutory notice of
the initial hearing, the proposal for decision, and the final order. The Commission accomplished
this by mailing the documents to the addresses provided by the Morrises to the Commission on
their P-5 form. The only issue that remains is whether the Commission's use of this method of
notice comports with established principles of due process.

 Due process requires only that the method of notice be reasonably calculated, under
the circumstances, to apprise the interested parties of the pendency of the action. Peralta v.
Heights Medical Ctr., Inc., 485 U.S. 80, 84 (1988); Walker v. Brodhead, 828 S.W.2d 278, 280
(Tex. App.Austin 1992, writ denied). Given the volume of correspondence the Commission is
required to disseminate to the thousands of oil and gas operators in the state, it is not unreasonable
for the Commission to provide these notices through the mail to the addresses the operators are
required by statute to provide the Commission. The Commission should be able to reasonably
rely on these addresses.

 This situation is analogous to the legitimate reliance by the Secretary of State on
addresses provided to the State under the Texas Business Corporation Act described in Tankard-Smith, Inc. Gen. Contractors v. Thursby, 663 S.W.2d 473, 475-76 (Tex. App.Houston [14th
Dist.] 1983, writ ref'd n.r.e.). The appellant in Tankard-Smith alleged that a default judgment
was void because it had not received a citation the Secretary of State sent to an incorrect address. 
The court of appeals rejected this point of error on the grounds that Tankard-Smith had the duty
to provide the Secretary of State with an address and notification of any change. The fact that
Tankard-Smith did not receive notice was not the fault of the State, but resulted from "appellant's
failure to comply with the provisions of the Business Corporation Act and notify the Secretary of
State of its change of address." Tankard-Smith, 663 S.W.2d at 476. We hold the Railroad
Commission is likewise entitled to rely on the statutorily required addresses provided to it by
regulated operators. Mailing required notices to these addresses is consistent with due process
because it is a method of notice reasonably calculated, under the circumstances, to apprise the
interested parties of the pendency of the action.


CONCLUSION


 Since there is both legally and factually sufficient evidence that the Commission
mailed the notice of hearing, proposal for decision, and final order to the addresses the Morrises
had provided the Commission, and that such a procedure is consistent with due process, we
overrule the Morrises' points of error. The trial-court judgment is affirmed.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: December 21, 1994

Do Not Publish Released for publication February 1, 1995. Tex. R. App. P. 90(c).

1.   Morris v. State of Texas, No. 6-90-046-CV (Tex. App.Texarkana June 25, 1991, writ
denied) (not designated for publication). The original trial was in the 299th District Court of
Travis County and the appeal was to this Court. The appeal was transferred to the Texarkana
Court of Appeals by the Texas Supreme Court as a matter of docket control. Tex. Gov't Code
Ann. § 73.001 (West 1988).
2.   In Burk Morris's response to the State's first request for admissions, he admitted
that he received actual notification of the August 6, 1987, hearing. At trial, he contended
that he received actual notice only eight days before the hearing.
3.   In their due process point of error six, the Morrises argue that the Commission
failed to render the final order within sixty days of the public hearing as required by
statute. Administrative Procedure Act, Tex. Gov't Code Ann. § 2001.143(a) (West 1995). 
The Morrises neglected to raise this issue in the trial court. Accordingly, they have failed
to preserve this alleged error for appellate review. Tex. R. App. P. 52(a).
4. Rule 3.1 has been amended since the mid-1980s; however, at all relevant times the
Commission required the submission of the organization report and annual refiling. The
current Commission rule specifically states that any notice requirement may be met by
mailing the item to the organization's address shown on the most recently filed
organization report. 16 Tex. Admin. Code § 3.1(a)(7). Notices that are sent by first-class
mail to the listed address and which are not returned are presumed received. Id.